

JUDGE SUBRAMANIAN

**United States District Court**

**Southern District of New York**

Jason Wimberly,

Plaintiff

Jury Demand

v



NY Community Financial, LLC

D/b/a The Check Cashing Place

Aka CFSC Check Cashing

## CIVIL COMPLAINT PURSUANT TO 42 USC 12182 Title III of The Americans With Disabilities Act; NY GBL 349 and NY GBL 350 And IIED Tort

## Jurisdiction

This Court has Federal Question jurisdiction pursuant to 28 USC 1331

This Court has supplemental jurisdiction over state law claims pursuant to 28 USC 1367

## Venue

Venue is proper because all events complained of herein took place ar the Defendant's East Harlem retail store on 116th and First Avenues and this locale falls within this Court's jurisdiction.

## FACTUAL BACKGROUNDS AND ALLEGATIONS

On October 3rd, 2024 at approximately 3:45 pm Eastern Standard Time the Plaintiff attempted to Cash a Check at the Defendant's East Harlem location at 2254 1st Avenue, New York, NY for approximately $1,610 dollars.

The check was issued by the United States Department of the Treasury.

1

The check was a social security disability insurance check.

Despite both signage in its own waiting area depicting a check cashing fee schedule featuring 2 running sets of fees for check cashing- the adjacent columns running down the fee schedule featured 2 different colors to implicate the difference in fees for government and non-government checks.

The fees highlighted in red implicate the fee for non-government checks.

The fees in yellow implicate the fee for government checks.

The fee schedule for government issued checks in amounts ranging from $1,600 to $1624.99 is $24.00

New York State Department of Financial Services regulates check cashing fees for checks issued by the Federal and State Governments which caps the fee at 1.5% of the total value of the check.

$24.00 is about 1.49% of $1,610.

The Defendant at least 5 times attempted to charge the Plaintiff approximately $35.00 which may be charged for non-government checks this amount some $11.00 dollars more than the New York State Law permits it to. That is to say the Defendant unlawfully attempted and eventually actually did charge the Plaintiff 50% more than the lawful fee.

Despite the Defendant's own posted sign in its own waiting area which at all times was in view of the teller at the Defendant's check cashing window, and the Plaintiff having repeatedly pointed out to all 5 tellers including a supervisor on staff, the Defendant refused to charge the Plaintiff the correct fee.

2

The Defendant's tellers, attempted to justify the usurious, exorbitant, and unlawful fee first by telling the Plaintiff the sign was old. This was a deliberate and calculated attempt to mislead him.

The Defendant's tellers next attempted to justify the fee by deceptively attempting to convince the Plaintiff that he had misinterpreted the fee schedule, and specifically that because his check amount was over $1,600 dollars and was instead for $1,610 they could lawfully charge him $35.00 as though it were a corporate or payroll check.

The Defendant's tellers next attempted to justify the usurious fee by telling the Plaintiff that the Computer system they use to cash the checks automatically sets the fee. This was also false.

In the alternative, even if it is true, this means that the Defendant has been either negligently or deliberately systematically overcharging government check recipients and thereby has engaged in a knowingly fraudulent pattern and practice aimed at the community members of East Harlem.

The Plaintiff next attempted to show the Defendant's it was a disability check, to which the Defendant's implicated that he was being charged the same fees they charge all the other disability benefits recipients from the Federal Government.

This inherently means by charging the non-government check holders what they may legally charge them and then charging disability check holders in excess of what the law permits the Defendant's have engaged in disparate treatment of persons with disabilities and therefore have violated Title III of the Americans With Disabilities Act.

The Plaintiff at this point informed the tellers that he was a dialysis patient and showed them the AV Fistula on his arm and begged them to charge him the correct rate.

The Plaintiff next attempted to show the Defendant's tellers they were incorrect by explaining that the fee table is set in incremental ranges and even then and even if the fee were to increase for a $1,610 check and were to be charged at the same percentage rate as it would be at the next tier which begins at $1,625 it would still only be about $24.38 or so.

The Tellers next had the Plaintiff call a number posted on the eastern wall facing west towards the entry of their retail check cashing establishment and the Plaintiff did so, only to receive an standard phone company error message that the number was not in service.

The Tellers next called another manager on the phones who had apparently several times refused to cash the Check at the appropriate amount.

The foregoing caused the Plaintiff injury and constitutes a willful violation of the Plaintiff's rights under state and federal law and needlessly caused the Plaintiff emotional distress, without any justifiable excuse or mitigating circumstance The defendant's unrelenting arrogance, stubborn malfeasance, utter disregard for the law and predatory behavior has resulted in concrete injury to the Plaintiff. Indeed, the Plaintiff had a reasonable fear and ultimately did have to walk the Plaintiff who is disable and very fragile to physical condition does not have a bank account and would have had and actually end up walking over 2 miles to the next nearest check casher with which he is registered jeopardizing his health and safety.

4

The Plaintiff experienced emotional distress because he feared he would be denied the use of and or access to his benefits in liquid form because the Defendants tellers had written on the check and had endorsed it for cashing at the higher fee, the Plaintiff thankfully was a able to retrieve the check after repeatedly insisting that he be given the check back, at which point a teller attempted to aggravate and frighten the Plaintiff informe him that even though it was difficult for him he would take the check to another casher because he could not afford to lose an additional 11 dollars while living on a fixed income, because he needs the extra cash to support disability related expenses, with a malicious smile and a laugh the teller then replied "it's too late because he [the teller] had already stamp endorsed the check" at that point Mr. Wimberly, grew angry unable to take the tellers repeated provocations he banged on the window and screamed for his check back, at which point the manager, a Hispanic woman— instructed the African American teller who was wearing his hair in the style of dreadlocks to give the Plaintiff his check back as he demanded. The teller repeatedly refused and yelled at Mr. Wimberly and quite pettily seeming to enjoy the pain and suffering he was able to cause Mr. Wimberly.

The Plaintiff now files this suit against the Defendant based upon the following causes of action and seeks amongst other things injunctive relief mandating that Defendant comply with New York State Regulations governing the amount of check cashing fees and because the Defendant's by their own statements have confessed to willfully overcharging poor and disabled community members that the Court impose punitive damage and make a referral for investigation of this pattern or practice of systemic violations of New York State Financial Services Regulations to the New York State Department of Financial Services and or the Attorney General's office for the State of New York.

The allegations in this suit constitute predatory behavior directed at one of New York's lowest income communities and one of its most vulnerable communities as a great deal of government check recipients are either economically disadvantaged, elderly and or disabled per se.

### **First Cause Of Action**

Disability Discrimination pursuant to Title III of the Americans with Disability's Act

The Plaintiff repeats and realleges all previously stated allegations as though set forth herein and further alleges violations of Title II on the grounds of disparate treatment.

### **Second Cause of Action**

### **Disability Discrimination on the grounds of disability harassment**

### **Third Cause of Action**

### **Violations of New York General Business Law 350**

Count I

NY GBL 350 provides in relevant part: "The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates

6

under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. For purposes of this article" The Defendant's tellers orally told the Plaintiff that its posted fee schedule was out of date, for the purposes of attempting to manipulate him into believing the posted sign was unreliable and thereby unlawfully induce him into accepting a check cashing fee rate of approximately 50% more than the lawful maximum fee. The Defendant's tellers did this despite the fee schedule posting the correct maximum fee allowed by law.

## Count II

The plaintiff repeats and realleges all previously stated allegations as though set forth here. The Defendant's tellers attempted to convince and persuade the Plaintiff that he had improperly read the fee schedule and that because his check amount was for less than $1625 but more than $1,600 they were entitled to charge him $35.00 and some change as opposed to $24.00 as posted at the intersection of the posted fee schedule indicating that for $1600 and $1625 government checks for which the posted sign maintained fees of $24.00 and $24. 38 respectively. The tellers made this statement to the Plaintiff insistent and repeatedly despite the fees being set by regulation and plainly as shown on their own signs only s a $.38 increase for checks ranging for $1625, to $1650.

## Count III

The Defendant's tellers insisted that the their computer systems automatically set the check cashing fee and could not be overridden by anyone at all within the organization to instruct the technology to charge the appropriate fee this was also a falsehood aimed at unlawfully enriching their employers coffers at the expense of the economically vulnerable, unsophisticated, elderly, and disabled, in short people it knew that were less likely to have either the means and or sophistication to fight back as it were, and sought to leverage this fact in full awareness that their actions were not only unethical, but deceptive, abusive and, unlawful too.

### **Fourth Cause of Action**

### **Violations of New York General Business Law 349**

#### Count I

The Plaintiff realleges and repeats the allegations in count 1 of the third cause of action as though fully set forth here

#### Count II

The Plaintiff realleges and repeats the allegations in count 2 of the third cause of action as though fully set forth here

#### Count III

The Plaintiff realleges and repeats the allegations in count 3 of the third cause of action as though fully set forth here

### Fifth Cause of Action

### Intentional Infliction of Emotional Distress

The Plaintiff repeats all previously alleged allegations as though set forth here.

WHEREFORE: The Plaintiff seeks the following relief: Declaratory judgment that pursuant to New York State Department of Financial Services regulations check cashers like the Defendant may not charge more than 1.5% of the total value of any check as per the regulations unless and until NYDFS decides otherwise; Injunctive relief mandating that Check Cashers like the Defendant honor any bona fide and verified check issued by a Federal, State, or Local Government agency and to post clearly conspicable signage in its retail locations in a font to be determined by the Court, advising patrons that the maximum fee consumers may be charged by them is set by law at 1.5%; to ensure that all tellers are knowledgeable about the lawful maximum fee and mandating that all Check Cashers like the Defendant be required to provide a person to contact in the event a teller attempts to charge them more than the 1.5% and to also clearly and conspicuously post the telephone number and address to the New York State Department of Financial Services for complaints not resolved at the store level. The Plaintiff further seeks statutory

9

damages for each count of conduct constituting a violation of NY GBL 349 and GBL 350; compensatory damages, and pecuniary damages; and owing to the reprehensibility of the defendants repeated, knowing, and willfully predatory violations of the Plaintiffs individual rights as existing as a part of a larger pattern and practice of willfully abusive punitive damages plus costs in amount to be determined at trial.

Respectfully submitted,

*Jason Wimberly*

Jason Wimberly
Plaintiff, pro se

Dated: 10/03/2024
New York, NY