UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jason Wimberly,<br><br>                          Plaintiff,<br><br>          -against-<br><br>NY Community Financial, LLC,<br>                         Defendant. | 24-cv-7547 (AS)<br><br>__OPINION AND ORDER__ |

ARUN SUBRAMANIAN, United States District Judge:

Jason Wimberly sued a check cashing business that he alleges overcharged him on account of his disability. For the following reasons, the defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Jason Wimberly is a New York resident who uses check-cashing services from defendant NY Community Financial, LLC (NYCF) to cash his Social Security Disability Insurance (SSDI) checks. Dkt. 70 ¶ 5.[1]

On October 3, 2024, Wimberly visited NYCF's location at 2254 1st Avenue in Manhattan, seeking to deposit an SSDI check in the amount of $1,610.00. *Id.* ¶ 8. NYCF charges a 1.5% fee to cash a government-issued check, compared to 2.2% for non-government checks. *Id.* ¶ 9. The NYCF teller quoted Wimberly the higher fee for non-government checks, even though he was seeking to cash a governmental check. Dkt. 36 at 3. Despite his insistence, the teller and other employees refused to honor the lower governmental rate. *Id.*

Wimberly filed this lawsuit the following day. Dkt. 1. The operative complaint alleges violations of the Equal Credit Opportunity Act (ECOA), the Americans with Disabilities Act (ADA), and both New York and New Jersey law. Dkt. 70 ¶¶ 19–35c.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 299 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

---

[1] The Court assumes the truth of the factual assertions in Wimberly's First Amended Complaint for the purposes of the motion to dismiss.

*Id.* (quoting *Iqbal*, 556 U.S. at 678). When evaluating whether a complaint clears this bar, the Court must "accept[] all factual allegations in the complaint as true[] and draw[] all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

Courts construe *pro se* complaints "liberally" and consider "the strongest arguments" the complaint suggests. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

## DISCUSSION

### I.    Wimberly has standing to raise his ADA claims

NYCF first challenges Wimberly's standing to raise discrimination claims under the ADA. NYCF points to the fact that Wimberly was never charged the erroneous non-governmental fee. Dkt. 36 at 5–6. It points to the facts that Wimberly was not charged an improper fee and has not alleged an intent to return as demonstrating that he lacks standing. *Id.*

This challenge fails. Taking the facts in his pleadings as true, Wimberly suffered an injury when he was denied the posted lower rate. Even if NYCF never actually charged him anything at all, the mere fact that he was forced to travel elsewhere to cash his check is itself an injury.

NYCF's argument to the contrary rests almost exclusively on *Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020). There, a "tester" who lived in Florida sued a New York hotel under the ADA. *Id.* at 165–66. But because the plaintiff "visited [the defendant's] online reservation systems solely to test for compliance with the ADA," he did not have standing. *Id.* at 168. Those facts stand in clear contrast to this case, where the plaintiff physically traveled to NYCF's business and sought to use its services for his personal benefit, not as a tester. *Harty* is therefore inapposite.

Moreover, the consequences of NYCF's argument would be sweeping. Under its theory of standing, someone who leaves and refuses to eat at a restaurant that charges a higher price to people of certain races would suffer no injury because they are able to patronize a different restaurant. That is obviously not the law. On the current record, Wimberly has standing to proceed on his discrimination claims.

**II.     Wimberly has stated a claim that he was treated differently based on his disability**

NYCF next argues that both the ADA and ECOA claims fail because Wimberly has not shown that he was treated differently because of his disability. The Court reads NYCF to raise two challenges: (1) that the teller and employees were unaware of Wimberly's disability and (2) that he was not treated differently on the basis of any disability. Both arguments fail.[2]

### A.     Wimberly has alleged facts that give rise to an inference that the teller and other employees knew of his disability

On the question of knowledge, NYCF argues that the complaint fails because "the dispute arose before plaintiff informed the teller(s) that he was a dialysis patient." Dkt. 36 at 7 (emphasis deleted). While true, that is not dispositive. Instead, the question is whether Wimberly has alleged facts that give rise to a plausible inference that the tellers knew he had a disability, even if he does not allege that he explicitly told them at the outset that day. He has.

First, Wimberly alleges that he had informed the "exact same group of tellers" of his disability on his prior visits. Dkt. 70 ¶¶ 14a, 17. That allegation alone is sufficient to give rise to the inference that the tellers knew of his disability on the day of the incident.

Second, Wimberly alleges that the tellers would have been able to tell from the check itself that he was disabled. Because of his age and the amount of the check, he alleges that the check must have been a SSDI check, which is naturally issued only to people with disabilities. *Id.* ¶ 14a. Taken together, these allegations give rise to a plausible inference that the tellers would have known of his disability.

### B.     Wimberly has stated a claim that he was treated differently on account of his disability

Wimberly has further alleged facts that give rise to a plausible inference that he was treated differently on account of his disability. It is uncontested that Wimberly was correct that he should have been charged the lower fee. Dkt. 73 at 2–3 (NYCF conceding that the lower amount should have been charged). While it is certainly possible that the overcharge was due to a mistake, as NYCF contends, it is plausible that NYCF decided to charge Wimberly the higher rate, assuming that a disabled patron would not think to travel elsewhere.[3] And the existence of an alternative explanation is insufficient to sustain a motion to dismiss where the plaintiff's theory is plausible.

---

[2] NYCF does not separately address Wimberly's claims for discrimination under state law in its motions. To the extent that it seeks to rely on the same arguments advanced with respect to the federal claims, its arguments fail for the same reasons.

[3] Although not directly relevant at this stage, the Court notes that NYCF's explanation of why Wimberly was overcharged is incoherent. While conceding that both New York and New Jersey have the same 1.5% fee cap on cashing governmental checks, it alleges that the "New York teller's misstep of selecting New Jersey from the dropdown menu triggered the point-of-sale system to recognize that the transaction was taking place in New York" and thus charged him the non-governmental rate. Dkt. 73 at 3. Even if there were some explanation as to why a New York teller's selection of New Jersey led the system to (correctly)

Of course, while Wimberly's allegations are sufficient at this stage, he will have to show evidence at the summary-judgment stage that the overcharge was linked to his disability. But for now, he has stated a claim that survives the motion to dismiss.

### III.    NYCF has forfeited any challenge to the applicability of the ECOA at this stage

NYCF further suggests that the ECOA does not apply to it since NYCF is a non-banking institution. *Id.* at 2. But it fails to cite any authority as to the scope of ECOA or any explanation as to why NYCF falls outside the law's scope. The Court thus deems the argument forfeited for the purposes of the motion to dismiss. *See United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him." (internal citations omitted)).

### IV.    Wimberly has stated a claim under New York General Business Law §§ 349 and 350

NYCF next challenges Wimberly's claims under New York General Business Law §§ 349 and 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (N.Y. 2012)).

NYCF's main challenge is that the alleged conduct is unlikely to mislead a reasonable consumer. Dkt. 36 at 8 (citing that the overcharge was "clearly in error"). But that argument is flatly contradicted by NYCF's explanation that its teller made an honest mistake. Dkt. 73 at 2–3. NYCF, in short, appears to expect the reasonable consumer to better understand its business than its own employees. Plus, whether the attempted overcharge was just an error, as opposed to a calculated policy on the part of NYCF to overcharge on government checks, seizing on the vulnerability of the recipients, is a factual question that can't be resolved at this stage. And since Wimberly alleged that other similar consumers would be affected in the same way, Dkt. 70 ¶ 29b, he has met his burden at this preliminary stage of showing an allegedly deceptive act or practice.

NYCF also focuses on the fact that Wimberly didn't proceed with the transaction, the suggestion being that Wimberly suffered no harm resulting from the complained-of conduct. Dkt. 36 at 9. But although he did not pay NYCF at the elevated rate, he relied on the misrepresentation to travel two miles to another check-cashing business. Dkt. 70 ¶ 29a. That is sufficient to show that he suffered an injury based on NYCF's alleged misrepresentation.

---

recognize that the transaction was actually happening in New York, that still does not explain why the higher rate was charged, given that the law appears to be identical in both states.

### V.    Wimberly's intentional-inflction-of-emotional-distress claim is dismissed

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege conduct "so outrageous and extreme as to go beyond all possible bounds of decency." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (cleaned up). Wimberly's claim falls short of that standard. The conduct alleged—an $11 overcharge and a lot of screaming—does not rise to that level. This claim is therefore dismissed.

### VI.    Wimberly's negligent-infliction-of-emotional-distress claim is dismissed

While the standard for negligent infliction of emotional distress under New York law is not as high as the intentional tort, a plaintiff must still "show a breach of a duty owed to him or her which unreasonably endangered his or her physical safety, or caused him or her to fear for his or her own safety." *Calkins v. Dernlan*, 234 A.D.3d 1088, 1090 (3d Dep't 2025). Wimberly has not pleaded facts showing an unreasonable risk to his physical safety. This claim is therefore dismissed.

### VII.    NYCF's challenge to the New Jersey claims fails

Finally, the Court turns to Wimberly's claims under New Jersey law. Although the incident in question happened in New York, Wimberly alleges that New Jersey law also applies because NYCF is headquartered in New Jersey. Dkt. 70 ¶¶ 30–30a.

NYCF fails to raise any viable challenge to Wimberly's citation of New Jersey law. Instead, the sole argument it makes is that "this Court cannot entertain claims under New Jersey state law" because it is a "New York federal forum." Dkt. 73 at 1. That argument is meritless. Although the Court is located in New York, nothing stops this Court from applying other states' laws where they apply. *See* 28 U.S.C. § 1652 (allowing federal courts to apply "[t]he laws of the several states" "in cases where they apply").

It may well be the case that New Jersey law is inapplicable in this case. But NYCF has failed to raise any viable argument as to why. The Court declines to make NYCF's arguments for it. *See Giovannetti*, 919 F.2d at 1230.

5

**CONCLUSION**

NYCF's motion to dismiss is GRANTED IN PART and DENIED IN PART. The intentional- and negligent-infliction-of-emotional-distress claims are DISMISSED. The remaining claims may proceed. The stay of discovery is lifted.

Within 21 days of this order, the parties shall meet and confer and (1) discuss a potential resolution of this case and, if they cannot resolve it, (2) submit a revised schedule for discovery and summary judgment.

The Clerk of Court is respectfully directed to terminate Dkt. 73.

SO ORDERED.

Dated: March 11, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge